**SYMINGTON WAYNE CORPORATION, W. T. Thornton, Jr., and Emil Kortchmar, Plaintiffs-Appellants,**

v.

**DRESSER INDUSTRIES, INC., Defendant-Respondent.**

**No. 532, Docket 31529.**

United States Court of Appeals Second Circuit.

Argued July 25, 1967.

Decided July 31, 1967.

4. Sherman v. United States, 261 F.Supp. 522, 534 (D.Hawaii 1966).

Geoffrey M. Kalmus, New York City (Hays, Sklar & Herzberg, New York City, on the brief), for plaintiffs-appellants.

John Logan O'Donnell, New York City (Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, on the brief), for defendant-respondent.

Before LUMBARD, Chief Judge, MOORE, Circuit Judge, and DIMOCK, District Judge.*

LUMBARD, Chief Judge:

The plaintiffs, Symington Wayne Corporation (Symington), a Maryland corporation whose stock is traded on the New York Stock Exchange, and two of its stockholders, appeal from the denial by Judge Bonsal in the Southern District of New York of a preliminary injunction against a tender offer by Dresser Industries, Inc. (Dresser), a Delaware corporation whose stock is also traded on the New York Stock Exchange, for 400,000 shares of Symington stock at $40 per share net. Judge Moore denied the application of the appellants for a stay pending appeal but granted a preference and we heard the appeal on July 25, 1967. As we agree with Judge Bonsal that plaintiffs have established neither that they are reasonably certain to prevail at trial nor that the injury they would incur by the denial of a preliminary injunction is irreparable and outweighs the harm which a preliminary injunction would cause Dresser and others, we affirm his denial of a preliminary injunction. See, e. g., Unicon Management Corp. v. Koppers Co., 366 F.2d 199 (2 Cir. 1966); Studebaker Corp. v. Gittlin, 360 F.2d 692 (2 Cir. 1966).

Dresser purchased some 178,000 shares of Symington stock, about 9% of the 2,000,000 shares outstanding, in April 1967, and sought to negotiate an acquisition of Symington in May and June 1967. Symington's board of directors rejected Dresser's proposal, and on June 28, 1967 announced agreement in principle on a combination with Universal American Corporation. Dresser's tender offer for

---

* Of the Southern District of New York, sitting by designation.

400,000 shares of Symington stock was first advertised on July 10, 1967, with a one-week deadline, and was extended for another week on July 17, 1967. The result of this offer was to raise the price of the stock substantially above the prior level. This suit was brought on July 11, 1967 by Symington and two of its stockholders, of whom one is an officer and director of Symington and the other tendered ten shares of Symington stock to Dresser.

Plaintiffs' first count charges that Dresser's tender offer was accompanied by four material misrepresentations and omissions proscribed by the Securities and Exchange Commission's Rule 10b–5, 17 C.F.R. § 240.10b–5. Two of plaintiffs' claims under Rule 10b–5 are based upon the omission from the advertisement of the offer, which included a letter of transmittal which could be clipped and used to tender shares, of two terms which were set forth in the invitation for tenders, which was obtainable from the tender agent and apparently from other brokers. The invitation, but not the advertisement, stated that Dresser might withdraw the offer "if any legal action or proceeding shall have been instituted or threatened in any court or government agency against Dresser or Symington Wayne with regard to this Invitation," and that the tender price should be reduced by the amount of any dividend with a record date prior to transfer of the tendered stock to Dresser. The third Rule 10b–5 claim is based upon a provision of the offer that if Dresser should acquire Symington before August 1, 1968 tendering stockholders will be offered the securities or other property to which they would have been entitled if still stockholders, a provision characterized by Dresser's news release of July 7, 1967 as assuring tendering stockholders "the equivalent" of what they would have received had they not tendered. Plaintiffs assert that this characterization is misleading because tendering stockholders will recognize taxable gain while any acquisition of Symington would probably involve a non-taxable exchange. Plaintiffs' final Rule 10b–5 claim is that while the offer stated that Dresser had offered Symington's board of directors one convertible preferred share of Dresser paying an annual dividend of $2 for each share of Symington, it did not state that the shares were to be callable at $42.50 per share after five years.

Plaintiffs' second count alleges that the provision of the tender offer entitling tendering stockholders to the property they would have received as stockholders if Dresser acquires Symington before August 1, 1968 is a "warrant or right to subscribe" to a security or an "investment contract" which must be registered before a public offering under the Securities Act of 1933, 48 Stat. 905 (1934), 15 U.S.C. § 77b(1); 48 Stat. 77 (1933), as amended, 15 U.S.C. § 77e. Plaintiffs contend that since Symington's certificate of incorporation requires an affirmative vote of two-thirds of the shares outstanding for approval of a merger, the harm they would suffer by consummation of the tender would be irreparable.

■ Although Dresser has not argued mootness, we note that this appeal was not mooted by the expiration of the tender offer. E. g., Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, 90 L.Ed.2d 1199 (1946). Dresser contends that plaintiffs, as private parties, have no standing to enforce the registration requirements of the Securities Act of 1933, and that Symington, which is neither a purchaser nor a seller, lacks standing to attack the tender offer under Rule 10b–5. Although there is no authority according private parties standing to enforce the registration requirements, and although this court has expressly left undecided the question whether one who is neither a purchaser nor a seller can attack a transaction under Rule 10b–5, see A. T. Brod & Co. v. Perlow, 375 F.2d 393, 397 n. 3 (2 Cir. 1967); Vine v. Beneficial Fin. Co., Inc., 374 F.2d 627, 636 (2 Cir. 1967), we shall assume arguendo, without deciding, that plaintiffs have standing on both counts.

843

■ We agree with Judge Bonsal that plaintiffs have not shown that they are likely to establish at trial that any of the four misrepresentations and omissions they allege are material and were or would be relied upon to an extent sufficient to justify an injunction. Compare List v. Fashion Park, Inc., 340 F.2d 457 (2 Cir.), cert. denied sub nom. List v. Lerner, 381 U.S. 908, 85 S.Ct. 1535, 14 L.Ed.2d 432 (1965).[1] Plaintiffs have not attempted to show that any of the stockholders who tendered their shares would probably not have tendered their shares if the two omissions from the advertisement had not occurred. The alleged misrepresentation of the equivalence of the tender offer and any future acquisition of Symington by Dresser seems to us of doubtful materiality in view of the wide awareness of the tax consequences of selling stock and the availability of tax advice. It also seems less than clear that Dresser's promise to allow tendering stockholders to participate in the consideration for any future acquisition of Symington by Dresser must be registered under the Securities Act of 1933, and we note that the tender agent obtained a no-action letter to this effect from the SEC.

■ We also agree with Judge Bonsal that plaintiffs have not shown that they will be irreparably injured by the denial of a preliminary injunction. They allege that Dresser will have acquired the power practically to block a merger of Symington with any other corporation by a fully successful tender; but if Dresser were found after trial on the merits to have violated Rule 10b–5, plaintiffs or other persons interested could apply to the court for relief against the voting of the shares. Compare Vine v. Beneficial Fin. Co., Inc., 374 F.2d 627, 632–36 (2 Cir. 1967). Dresser, on the other hand, would be irreparably injured

by the loss of its expenditures on the tender offer should a preliminary injunction be granted, and those tendering stockholders who wish to complete their tenders despite the facts urged by plaintiffs might likewise be irreparably injured should no equally favorable opportunity to dispose of their stock arise. Thus the balance of hardships tips decidedly against the grant of a preliminary injunction.

Affirmed.

1. "Insofar as is pertinent here, the test of 'reliance' is whether 'the misrepresentation is a substantial factor in determining the course of conduct which results in [the recipient's] loss.' Restatement, Torts § 546 (1938); accord, Prosser, Torts 550 (2 ed. 1955); I Harper & James, Torts 583–84 (1956). The reason for this requirement, as explained by the authorities cited, is to certify that the conduct of the defendant actually caused the plaintiff's injury." 340 F.2d at 462.