UNITED STATES of America,
Plaintiff,

v.

FEATURE SPORTS, INC. et al.,
Defendants.

No. 69 Civ. 3784.

United States District Court,
S. D. New York.

Sept. 25, 1969.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, New York City, for plaintiff; Richard M. Hall, Asst. U. S. Atty., of counsel.

Saxe, Bacon & Bolan, New York City, for defendants Cohn, Bolan and Championship Sports Corporations.

## MEMORANDUM DECISION AND ORDER

LASKER, District Judge.

The government moves for a preliminary injunction enjoining an escrowee holding assets of Championship Sports, Inc., a New York corporation, or Championship Sports, Inc., a Massachusetts corporation (collectively "CSI"[1]) from transferring or removing them. Specifically, the government asks the court to prohibit the escrowee from disposing of $36,040.36 which was placed in the escrowee's custody by stipulation of dismissal approved February 28, 1969, by Judge Levet in a tax refund action entitled "Championship Sports, Inc. v. United States, 63 Civil 3735." Under the terms of that stipulation it was agreed that the government did not waive its claim against the fund, and that the escrowee would hold the sum for six months before distribution. The stipulation is regrettably unclear as to the conditions which would justify an extension of the escrow beyond the six-month period. By its terms the escrow would have expired August 31, 1969. On August 29, 1969, the government initiated this new action under Sections 1340 and 1345 of Title 28, U.S.C., and Sections 7401, 7402, and 7403 of the Internal Revenue Code of 1954.

Prior to the hearing on the instant motion, Judge McLean issued a temporary restraining order barring the escrowee from transferring the fund.

The government's complaint alleges two causes of action:

The first charges in substance that the individual defendants and CSI fraudulently depleted and diverted the assets of a corporation known as Feature Sports, Inc. ("FSI") so as to render impossible the levying on a lien (later ripened into a judgment) in favor of the United States against Feature Sports, Inc. It is alleged:

"VII. The principal business interest of Feature Sports, Inc., consisted of its contractual relationship with Floyd Patterson, whereby Floyd Patterson had in the past agreed to allow Feature Sports, Inc., exclusively, to promote his boxing matches. In the aforementioned depletion of the assets of Feature Sports, Inc., the officers and directors of Feature Sports, Inc., planned to cause Floyd Patterson to transfer his business to the new corporations, and the new corporations did so promote Floyd Patterson's subsequent boxing matches, which was to the benefit of Championship Sports, Inc., of Massachusetts, and Championship Sports, Inc., of New York, and their stockholders, Roy M. Cohn, Thomas A. Bolan, and William D. Fugazy. This deprived the defendant, Feature Sports, Inc., of all corporate opportunity, and deprived it of its ability to pay its debts, and was thus a fraud on the creditors of Feature Sports, Inc., including this plaintiff. The defendant, Feature Sports, Inc., was rendered insolvent by these actions and it has remained insolvent and inactive until this date."

The second cause of action is brought against defendants Cohn and Bolan only. It seeks to foreclose a government lien on stock of CSI owned by Cohn and Bolan and to restrain them from transferring that stock prior to such foreclosure. The lien in question secures a judgment of $135,769.94 granted against Cohn and Bolan for failure properly to account to the court for funds held under their control for Ingemar Johansson as a result of a court order.

The government's purpose in applying for a preliminary injunction is to "freeze" the money presently held in escrow for CSI until the outcome of this suit. This is, of course, the object that a preliminary injunction, if allowable, is

---

[1]. There were actually five CSIs formed— one each in Massachusetts, New York, Delaware, Illinois, and Pennsylvania. However, CSI Massachusetts owned the stock of all the others, which have been dissolved, and for purposes of this opinion the court treats them as a single corporation.

intended to perform—that is, the preservation of the status quo pending final determination of the action. Unicon Management Corp. v. Koppers Co., Inc., 366 F.2d 199, 204 (2d Cir., 1966, Opinion of Chief Judge Lumbard); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2d Cir., 1953, Opinion of Judge Frank); 7 Moore's Federal Practice, par. 65.04[1]. Under the familiar principles governing the issuance of preliminary injunctions, the moving party must show that it will probably prevail on the merits and that it would be irreparably injured if the injunction were denied. Symington Wayne Corp. v. Dresser Industries, Inc., 383 F.2d 840 (2d Cir., 1967).

■ An analysis of the sparse evidentiary material submitted on the motion forces the conclusion that the government has not established, at least on the present state of the record, that it will probably prevail on the merits of the first cause of action. The government has furnished no first-hand evidence to establish either that substantially all of the assets of FSI were transferred to CSI, or that if such assets were conveyed, they were transferred for fraudulent purposes. The mere assertions of the Assistant United States Attorney in his affidavit are not sufficient to fulfill the government's burden. While that burden, of course, does not require proof by a preponderance of the evidence at this time, it is necessary for the government to establish the likelihood of its success at trial. This it has not done as to the first cause of action. The cause of action appears to stand or fall on the provability of the allegation that "the principal business interest of Feature Sports, Inc., consisted of its contractual relationship with Floyd Patterson, whereby Floyd Patterson had in the past agreed to allow Feature Sports, Inc., exclusively, to promote his boxing matches" and that this asset was transferred from FSI to CSI fraudulently. Against the unsupported, second-hand assertion of the Assistant United States Attorney on this point,

the defendants have furnished affidavits of two persons with first-hand knowledge of the situation. Even if we were to disregard the denials of one of the affiants, Bolan, who is a defendant and party in interest, the affidavit of Floyd Patterson, who has no interest in this litigation or any of the many lawsuits which have preceded it, stands unrefuted. Patterson's affidavit so seriously contests the major allegation of the government's complaint that, standing uncontested, it tips the balance of probability to the defendants rather than to the government. Patterson unequivocally swears:

"I hereby deny that I at any time ever agreed orally or in writing with Feature Sports, Inc. to exclusively promote my boxing matches. I have never given any person or corporation an exclusive right to promote my fights. I have had many different promoters.

. . . . .

"The fact is that I was dissatisfied with the manner in which Feature Sports, Inc. and particularly its president, William D. Fugazy, had promoted the Ingemar Johansson matches and notified Feature Sports, Inc. it would promote no more of my fights after the Miami Beach fight.

"I became acquainted with Mr. Thomas A. Bolan while he was handling legal matters for Feature Sports, Inc. I had found him to be a very honest, reliable and efficient person. After the March 1961 Miami Beach fight, I asked Mr. Bolan if he would be interested in promoting my next match. Mr. Bolan agreed to this. I told him that I wanted him and him alone to be responsible for the promotion. Mr. Bolan told me he would form a corporation over which he would have complete control and that that corporation would be the promoter. Mr. Bolan then formed Championship Sports, Inc., and I agreed to fight Tom McNeeley in Boston, Massachusetts under the promotion of Championship Sports, Inc. The match was later switched to Toronto, Canada."

While we recognize that "Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved" (United States v. First National City Bank, 379 U.S. 378, 383, 85 S.Ct. 528, 531, 13 L.Ed.2d 365 (1965) ), nevertheless even the government must establish by solid evidence the likelihood of its ultimate success to warrant the drastic remedy of a preliminary injunction.

Nor does the second cause of action fortify the government's position. The second cause of action is brought against Cohn and Bolan only. Since Cohn and Bolan are admittedly not the sole stockholders of CSI, a claim against them can constitute no independant basis for freezing the funds belonging to CSI. Beyond this, it is to be noted that the only relief which the government has requested against Cohn and Bolan in the complaint itself is a foreclosure of its lien on their property and a permanent injunction against the transfer of their CSI stock (presumably pending the foreclosure). It may be that the government could make a showing that would entitle it to a preliminary injunction against Cohn and Bolan preventing the transfer by them of *their CSI stock* pendente lite, but no such prayer for relief has been made in the present motion which asks only that CSI's moneys be held in escrow pending trial.

The determination that an injunction should not be granted in the instant case is fortified by the apparent absence of any change in the state of facts which existed at the time the prior tax litigation (referred to above) by CSI against the United States was settled in February of 1968.

For the reasons stated above the motion is denied.

It is so ordered.