Leon J. SAVOIE and Marion Savoie,
Plaintiffs–Appellees,

v.

MERCHANTS BANK, Merchant Bancshares, Inc., The Merchants Trust Company, Dudley H. Davis, William K. Mulhern, Susan J. Moses, Bruce Butterfield, Raymond C. Pecor, Jr., Fred G. Smith, and Robert A. Skiff, Defendants–Appellants.

No. 953, Docket 95–7776.

United States Court of Appeals,
Second Circuit.

Argued Feb. 23, 1996.

Decided May 9, 1996.

Norman Williams, Gravel and Shea, Burlington, VT, on the brief for defendants-appellants.

Dennis J. Johnson, South Burlington, VT (L. Randolph Amis, III, Burlington, VT, on the brief), for plaintiffs-appellees.

Before: NEWMAN, Chief Judge, KEARSE, Circuit Judge, and BURNS,* District Judge.

* Honorable Ellen Bree Burns, of the United States District Court for the District of Connecticut, sitting by designation.

JON O. NEWMAN, Chief Judge:

This appeal presents various questions relating to a district court's authority to enter a preliminary injunction aimed at restoring the status quo, after a party, aware that the injunction has been sought, has taken action that the injunction would have precluded. Defendants-appellants, the Merchants Bank and various related entities and corporate officials (collectively the "Bank"), appeal from the July 20, 1995, judgment of the District Court for the District of Vermont (T.F. Gilroy Daly, Judge, sitting by designation) granting a preliminary injunction in favor of plaintiffs-appellees Leon and Marion Savoie. The preliminary injunction requires the Bank to escrow $500,000 to facilitate an award of attorney's fees that might subsequently be made. We affirm the grant of the preliminary injunction and remand for further proceedings.

## Background

In 1993 the Savoies opened a trust account at The Merchants Trust Company, a wholly-owned subsidiary of The Merchants Bank. Later that year the Bank invested funds in the trust accounts of its customers, including the Savoies, in the Piper Jaffray Institutional Government Income Portfolio ("Piper Fund"), which soon suffered substantial losses.

The Bank's decision to invest in the Piper Fund led to an investigation by FDIC auditors, as well as numerous customer complaints. In September 1994 a trust customer filed suit in state court against the Bank, alleging that the Bank had violated its fiduciary duty in purchasing shares in the Piper Fund. In October 1994 the Savoies filed this lawsuit against the Bank, alleging violations of the federal securities laws and the Racketeer Influenced and Corrupt Organizations Act (RICO), and pendent state claims for negligent misrepresentation, breach of contract, and breach of fiduciary duty. The suit was filed as a class action, although no class was ever certified.

With respect to their claims under the securities laws, the Savoies principally alleged that the Bank fraudulently induced them to invest in the Piper Fund by sending false and misleading letters praising the investment as safe when it was actually highly speculative, and by failing to correct those misstatements, in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). The Savoies also alleged that the Bank violated section 10(b) by "churning"—unnecessarily selling and buying back plaintiffs' shares in the Piper Fund in order to generate fees and payments for itself—and that the Bank violated section 12(2) of the Act, 15 U.S.C. § 77l(2), by making false or misleading statements in selling securities by prospectus or oral communication.

On November 28, 1994, the Bank announced that it would reimburse its trust customers for their losses, in the amount of approximately $9 million, before the end of the year. At that point plaintiffs sought a temporary restraining order requiring the Bank to escrow $500,000 of the planned $9 million distribution for a possible award of attorney's fees, pending a determination of whether plaintiffs are entitled to such an award for providing a common benefit to the class.

The District Court referred the matter to a Magistrate Judge for a report and recommendation. The Magistrate Judge held a hearing on December 16, 1994, at which several witnesses testified. Since both sides had the opportunity to be heard, the Magistrate Judge treated the motion for a temporary restraining order as a motion for a preliminary injunction. At the end of the hearing, the Magistrate Judge issued an oral report and recommendation recommending the issuance of the injunction (the "December 16 Report").

On or about December 28, 1994, the Bank distributed approximately $9 million to its trust customers, without setting aside $500,000 for a possible award of attorney's fees. On January 4, 1995, the Bank filed objections to the December 16 Report.

The District Judge held a status conference on January 5, 1995, at which he indicated his extreme displeasure with the Bank for ignoring the Magistrate Judge's December 16 Report, and ordered the Bank immediate-

ly to escrow $500,000, pending the Court's consideration of the recommendation to issue the preliminary injunction. The District Judge subsequently referred to the Magistrate Judge the issue of the Court's subject matter jurisdiction to grant the preliminary injunction. On May 2, 1995, the Magistrate Judge issued a supplemental report and recommendation (the "May 2 Report"), in which he concluded that the Court had jurisdiction to enter the preliminary injunction and award attorney's fees, and also recommended holding a hearing on whether plaintiffs' lawsuit had caused the Bank to make the $9 million reimbursement.

On July 19, 1995, the District Court ruled that the claims alleged in the Complaint were moot, and that the only remaining issue was whether plaintiffs were entitled to attorney's fees (the "July 19 Order"). The District Court also stated that the plaintiffs' suit was a substantial cause of the Bank's reimbursement of its customers. The District Court then stated that it affirmed, approved, and adopted *each* report and recommendation of the Magistrate Judge, and ordered plaintiffs' counsel to promptly file a motion for attorney's fees.

The judgment of the District Court, entered on July 20, 1995, was in one respect narrower and in another respect broader than the Court's July 19 Order. The judgment first stated that pursuant to the July 19 Order "the report and recommendation of the Magistrate Judge (Court Paper No. 49) is ADOPTED as order of this court." Court Paper No. 49 is the Magistrate Judge's May 2 Report, in which the Magistrate Judge concluded that the Court had subject matter jurisdiction over the instant lawsuit and recommended a hearing on the issue of causation. The judgment did not recite that the Court was adopting the Magistrate Judge's earlier December 16 Report, which recommended granting the preliminary injunction, nor did it memorialize the provisions of the Court's July 19 Order that had (1) adopted *both* reports of the Magistrate Judge and (2) had stated that there was a causal connection between the lawsuit and the Bank's payment. The judgment then broadly stated, "Judgment is hereby entered in favor of the plaintiffs ...," a statement that could be read as an adjudication in favor of plaintiffs with respect to the underlying merits of the lawsuit.

Plaintiffs filed a motion for leave to file a supplemental complaint,[1] and subsequently served a motion to vacate the judgment, pursuant to Fed.R.Civ.P. 60(b). The Bank then filed a notice of appeal from the judgment and subsequently moved in this Court for an order staying any further District Court proceedings on the plaintiffs' motions to vacate and to supplement. We denied a stay.

On October 5, 1995, the Magistrate Judge conducted a hearing on plaintiffs' motions. In support of the motion to vacate, plaintiffs argued that the judgment in their favor had been entered in error, because there had been no findings with respect to the underlying merits of plaintiffs' claims, and indeed the Court had indicated in its July 19 Order that it considered plaintiffs' claims moot. Neither party pointed out to the Magistrate Judge that the judgment had expressly incorporated only his May 2 Report, thereby making no express adjudication of the motion for a preliminary injunction.

In an oral report and recommendation, the Magistrate Judge stated that the central issue on the forthcoming appeal would be whether the District Court had jurisdiction to order that the $9 million be considered a common fund for the benefit of the Bank's customers and then to award plaintiffs attorney's fees out of these funds. He concluded that even if the judgment was entered in error, the most expeditious course was to allow the appellate court to rule on the District Court's jurisdiction. Accordingly, the Magistrate Judge recommended denying the motion to vacate the judgment, and also recommended denial of the motion to supplement the complaint on the ground that the appeal deprived the District Court of juris-

---

1. In the proposed supplemental complaint plaintiffs sought a declaratory judgment that plaintiffs and the putative class in the instant matter had not relinquished any entitlements to certain mo-

nies being paid from a settlement fund generated in a class action then pending in the District of Minnesota, which was brought on behalf of all purchasers of shares in the Piper Fund.

diction to rule on the motion. The District Court subsequently adopted these recommendations.

Before this Court, the Bank contends that we should reverse the grant of the preliminary injunction and vacate the judgment.

### Discussion

As a threshold matter, we note that the judgment is unclear as to whether it grants a preliminary injunction. The first paragraph of the judgment adopted only the Magistrate Judge's recommendation on subject matter jurisdiction, and the second paragraph did not identify the matters with respect to which the Court was entering a judgment.

Nevertheless, we think that it is sufficiently clear that the District Court granted plaintiffs' motion for a preliminary injunction.[2] Both reports of the Magistrate Judge were in support of granting the preliminary injunction, and the District Court's July 19 Order expressly adopted both reports and stated that the preliminary injunction was granted. Moreover, all parties agree that the grant of the preliminary injunction is before this Court for review. Therefore, the judgment's recital that "[j]udgment is hereby entered in favor of the plaintiffs" may fairly be read to order the preliminary injunction, even though it does not order all of the relief sought in the complaint. *See Ellender v. Schweiker,* 781 F.2d 314, 317 (2d Cir.1986) (examining opinions, orders, and memoranda issued by District Court in interpreting meaning of judgment).

### I. The Preliminary Injunction

#### A. Applicable Standards

The standards for issuance of a preliminary injunction and for review of the grant

or denial of a preliminary injunction are well known and need not be repeated. *See Sweeney v. Bane,* 996 F.2d 1384, 1388 (2d Cir. 1993).

The standards for attorney's fees under the common fund doctrine are also settled. A party recovering a fund for the benefit of others, in addition to himself, may recover his costs, including his attorney's fees, from the fund itself or directly from the other parties enjoying the benefit. *See Christensen v. Kiewit–Murdock Investment Corp.,* 815 F.2d 206, 210 (2d Cir.) (citing *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975)), *cert. denied,* 484 U.S. 908, 108 S.Ct. 250, 98 L.Ed.2d 209 (1987). The common fund doctrine does not apply, however, when fees are sought from the assets of the losing party, and the fee award would not come from a common fund nor be assessed against persons who have derived benefit from the lawsuit. *Id.* at 211.[3]

In order to receive an award of attorney's fees under the common fund doctrine, the plaintiff need not have won his lawsuit; "[f]ees may be awarded even when there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained." *Koppel v. Wien,* 743 F.2d 129, 135 (2d Cir.1984); *see also Blau v. Rayette–Faberge, Inc.,* 389 F.2d 469, 474 (2d Cir.1968) (award of fees even though suit had not commenced); *Kopet v. Esquire Realty Co.,* 523 F.2d 1005, 1008–09 (2d Cir.1975) (permissible to award fees for benefit arising from prosecution of state claims that were dismissed for lack of pendent jurisdiction).

However, before awarding fees in a case that has become moot, the district court

---

**2.** The ambiguity would have been avoided if the judgment had (1) expressly granted the preliminary injunction, (2) implemented the District Court's July 19 Order, or (3) implemented both the December 16 and the May 2 Reports of the Magistrate Judge.

**3.** In agreement with the First Circuit, *see Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 522 n. 6 (1st Cir.1991), we use the term "common fund doctrine" somewhat broadly so as to incorporate the "common benefit" doc-

trine—the rule by which plaintiffs may seek recovery of costs, even where no "fund" has been recovered, as long as it is possible to spread the burden of those costs proportionately among members of the class, *see, e.g., Amalgamated Clothing and Textile Workers Union v. Wal–Mart Stores, Inc.,* 54 F.3d 69, 71 (2d Cir.1995) (applying common benefit doctrine). *See Rosenbaum v. MacAllister,* 64 F.3d 1439, 1444 (10th Cir. 1995), for a discussion of the distinction between the two doctrines.

must determine whether plaintiff's suit was a substantial cause of the benefit obtained. *See Koppel*, 743 F.2d at 135. When the defendant has taken action to moot the lawsuit, defendant bears the burden of proof to establish the absence of a causal connection between the lawsuit and the defendant's action. *Id.*

 In addition to a causal. connection, some Circuits have required a showing that the complaint has sufficient merit to survive a motion to dismiss, before they will award fees when a case has been mooted. *See, e.g., Lewis v. Anderson*, 692 F.2d 1267, 1270–71 (9th Cir.1982); *Kahan v. Rosenstiel*, 424 F.2d 161, 167 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). This Court has not imposed that additional requirement, *see, e.g., Koppel*, 743 F.2d at 133–35, and we decline to do so now.

In deciding motions to dismiss for failure to state a claim under the federal securities laws, courts regularly resolve far-reaching and complex questions of law. *See, e.g., In re Time Warner Inc. Securities Litigation*, 9 F.3d 259, 261 (2d Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994); *Denny v. Barber*, 576 F.2d 465, 467 (2d Cir.1978). In a case that has become moot, the parties do not have the same incentive to fully litigate the issues and develop the record, because the only real-world consequences remaining are matters collateral to the merits of the suit. Accordingly, we do not consider it advisable to decide difficult questions involving the securities laws in cases that have become moot. Rather than undertake a detailed assessment of the complaint, we focus on whether the lawsuit played a substantial role in the defendant's decision to take corrective action.

### B. Application of the Standards

The Bank initially challenges the preliminary injunction on the ground that the District Court lacked subject matter jurisdiction. The Bank also contends that there are inade-

quate findings and insufficient evidence of irreparable harm. Additionally, the Bank argues that, since the District Court did not find that the Bank acted in bad faith, it cannot order the Bank to use its own funds to pay plaintiffs' attorney's fees, now that the common fund has been distributed.

 1. *Subject matter jurisdiction.* The jurisdictional challenge is really a dispute about the legal sufficiency of each of the allegations of the complaint. However, as a general rule "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). As long as the federal claim is colorable, a court properly assumes jurisdiction over the subject matter of the suit. *Id.* at 682–83, 66 S.Ct. at 776. Plaintiffs' complaint easily survives that modest standard.[4] *See* Magistrate Judge's May 2 Report (explaining in detail why plaintiffs' claims would survive even a motion to dismiss). The District Court had jurisdiction over plaintiffs' suit.

 The Bank then refines its argument to contend that, even though a "colorable" or "prima facie" federal cause of action may be sufficient to confer jurisdiction on a district court until it decides a motion to dismiss for failure to state a claim, more than a colorable claim is necessary in order for a court to have the authority to grant the extraordinary remedy of preliminary injunctive relief. In support of this proposition, the Bank cites to the general rule:

> Where a challenge to jurisdiction is interposed on an application for a preliminary injunction "[t]he plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits."

*Visual Sciences, Inc. v. Integrated Communications Inc.*, 660 F.2d 56, 59 (2d Cir.1981) (quoting *Industrial Electronics Corp. v. Cline*, 330 F.2d 480, 482 (3d Cir.1964)); *see*

---

**4.** The only specific arguments the Bank makes relating to any deficiencies in the Complaint are that the allegations do not meet Rule 9(b)'s requirement that fraud be pled with particularity. Rule 9(b) is a pleading requirement that has been applied to securities actions in order to prevent strike suits. *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114, 121 (2d Cir.1982). Rule 9(b) does not define the boundaries of a federal court's jurisdiction.

*also A.H. Bull Steamship Co. v. National Marine Engineers' Beneficial Ass'n,* 250 F.2d 332, 337 (2d Cir.1957).

We do not believe this general rule applies to an injunction of the sort sought here where (1) the underlying claims have become moot, (2) the alleged jurisdictional issue relates to the merits of the complaint, and (3) the injunction seeks limited and collateral relief. The cases relied on by the Bank did not involve jurisdictional challenges based on the failure to state a federal claim. *Visual Sciences* involved a question of personal jurisdiction, and *A.H. Bull* involved the application of a federal statute depriving federal courts of jurisdiction to issue injunctions prohibiting peaceful labor strikes. Moreover, the preliminary injunction issued in this action is not of the type that might lead us to hold that some showing greater than that described in *Bell v. Hood* is required to support the Court's jurisdiction. The preliminary injunction merely ordered the Bank to set aside a portion of money in an interest-bearing account for a short time, pending a determination of whether attorney's fees should be awarded. It did not significantly intrude into the Bank's decision-making abilities, *see, e.g., Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir.1970), or require the continuing supervision of the Court for its enforcement, *see, e.g., Bethlehem Engineering Export Co. v. Christie,* 105 F.2d 933, 935 (2d Cir.1939). Such a minor restraint does not require a greater showing to support jurisdiction to enter a preliminary injunction than that presented in this case.

 2. *The escrow requirement.* To obtain the preliminary injunction, plaintiffs needed to establish a likelihood of success on the merits of their claim that they were entitled to an award of attorney's fees, and irreparable harm if the monies were not set aside. *See Sweeney,* 996 F.2d at 1388. If the District Court had issued a preliminary injunction *before* the Bank distributed the $9 million to its trust customers, we would have affirmed that order.

The issue in this case is whether the Bank's distribution of the money after the injunction was sought and recommended by the Magistrate Judge but before it was ordered by the District Court requires a different result. We think not, but our conclusion requires further consideration of the nature of plaintiffs' claim.

 Normally, the plaintiffs could recover attorney's fees only from a common fund. They could not seek fees from the Bank, absent a finding of bad faith, because a fee award against the Bank would not result in a pass-through of the costs to the trust customers who benefitted, at least in part, from the lawsuit. *See Christensen,* 815 F.2d at 211. If plaintiffs were subsequently awarded attorney's fees but a portion of the common fund had not been set aside, plaintiffs would have had to attempt to seek recovery from each of the hundreds of trust customers who received part of the $9 million payment. We agree with the Magistrate Judge that such a recourse is so impractical as to be infeasible, and constitutes irreparable harm. *See, e.g., Iowa Center Associates v. Watson,* 456 F.Supp. 1108, 1113 (N.D.Ill. 1978) (finding irreparable injury where plaintiff would be forced to conduct multiple lawsuits to obtain the same monetary relief sought in the preliminary injunction). Accordingly, where a defendant intends to distribute the entirety of what is arguably a common fund, plaintiffs should seek a preliminary injunction to set aside a portion of the common fund, in order to ensure the availability of common fund monies pending a determination by a court as to whether a fee award is warranted. *See Wyser–Pratte v. Van Dorn Co.,* 49 F.3d 213, 218 (6th Cir. 1995) (declining to award plaintiff attorney's fees pursuant to common fund doctrine, in part because plaintiff had not fully pursued motion for preliminary injunction to set aside portion of defendant's intended distribution).

 For either of two reasons, the District Court's order was appropriate, notwithstanding the Bank's prior distribution of the $9 million. First, it is settled that "where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may by mandatory injunction restore the *status quo.*" *Porter v. Lee,* 328 U.S. 246, 251, 66 S.Ct. 1096, 1099, 90 L.Ed. 1199 (1946); *see Symington Wayne*

*Corp. v. Dresser Industries, Inc.,* 383 F.2d 840, 842 (2d Cir.1967). Here, the Bank not only had notice that the set-aside was requested, but the Magistrate Judge had recommended issuance of the preliminary injunction compelling such a set-aside. In these circumstances the District Court had power to restore the status quo ante by entering a preliminary injunction ordering the Bank to escrow $500,000.[5] *Cf. Garcia v. Lawn,* 805 F.2d 1400, 1403 (9th Cir.1986) (stating that, in context of issuing injunction to restore status quo, courts have broad discretion in shaping equitable remedies and that "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available," but rather "whether there can be any effective relief").

We appreciate that by ordering the Bank to set aside $500,000, the Court has restored the "status quo" from the plaintiffs' perspective, not necessarily from the Bank's. To restore the status quo completely from the Bank's perspective, the Bank would have to recapture the $500,000 from its customers, either immediately or in deductions from subsequent payments. But the difficulty of doing so (because of either practical considerations, the risk of displeasing its customers, or whatever limitations Vermont trust law might impose) is properly laid at the doorstep of the Bank, which acted precipitously, not the plaintiffs, who appropriately pursued their legal remedies. Thus, even if the injunction is viewed as compelling the Bank to escrow its own funds, the circumstances of this case make that appropriate.

Alternatively, the injunction may be approved by recognizing that money is fungible and by regarding what happened on December 28, 1994, at least conceptually, as a distribution by the Bank of $8.5 million of common fund money and $500,000 of its own money. *Cf. Chase National Bank of City of New York v. Lyford,* 147 F.2d 273, 277 (2d Cir. 1945) (where bank took action to appropriate debtor's balance as a set-off despite injunction freezing debtor's assets, court in summary proceeding could recharacterize transaction so as to restore status quo). The $500,000 now in escrow can be viewed as the remaining common fund money, and if the District Court finds a causal connection between the lawsuit and the benefit obtained, the Court can use this money to award attorney's fees.

Although it is true that the preliminary injunction did not become an actual order of the Court until the District Judge ruled on the Magistrate Judge's recommendation, *see* 28 U.S.C. § 636(b)(1), it is not the case, as the Bank apparently believes, that recommendations from a magistrate judge have no significance and can be ignored.[6] The purpose of the Federal Magistrates Act is to reduce the workload of overburdened district courts. *See United States v. Williams,* 23 F.3d 629, 633 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 641, 130 L.Ed.2d 547 (1994).

**5.** In the related context of a district court's denial of a preliminary injunction, this Court has ruled that, in general, an appeal from the denial of a preliminary injunction is mooted by the occurrence of the action sought to be enjoined, *see Bank of New York Co. v. Northeast Bancorp, Inc.,* 9 F.3d 1065, 1067 (2d Cir.1993), but has reserved the question of whether there should be an exception to the general rule in cases where an appellate court can feasibly restore the status quo, *see id.; cf. Garcia v. Lawn,* 805 F.2d 1400, 1402–03 (9th Cir.1986) (holding that appeal from denial of preliminary injunction is not moot if district court has power to restore the status quo); *Symington Wayne,* 383 F.2d at 842 (holding that appeal from denial of preliminary injunction against tender offer was not mooted by expiration of tender offer).

**6.** Neither is it the case that parties are completely at liberty to undertake any action, even if it affects the subject matter of litigation pending before a court, simply because there is no court order expressly forbidding them from engaging in such action. *See, e.g., Merrimack River Savings Bank v. City of Clay Center,* 219 U.S. 527, 535–36, 31 S.Ct. 295, 296, 55 L.Ed. 320 (1911) ("[I]rrespective of any such injunction actually issued the willful removal beyond the reach of the court of the subject-matter of the litigation ... [on] appeal ... is, in and of itself, a contempt of the appellate jurisdiction of this court."); *Griffin v. County School Board,* 363 F.2d 206, 210 (4th Cir.) (holding school board in contempt for authorizing distribution of tuition grants, even though no injunction had been issued against the appropriation, because board knew that plaintiffs sought injunction and board's action undermined court's authority to resolve the dispute), *cert. denied,* 385 U.S. 960, 87 S.Ct. 395, 17 L.Ed.2d 305 (1966).

As relevant here, the Act outlines a precise procedure by which various matters, including motions for a preliminary injunction, can be referred to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1). The Act further provides for a ten-day period in which parties can file objections to the recommendation of the magistrate judge. *Id.* If parties do not file such objections and the district court subsequently accepts the magistrate judge's recommendation, parties have forgone their right to appeal the district court's order. *See McCarthy v. Manson,* 714 F.2d 234, 237 & n. 2 (2d Cir.1983). Accordingly, it has long been clear that there are circumstances in which parties ignore recommendations of the magistrate judge at their peril.

Here, the Magistrate Judge's report that recommended granting the preliminary injunction was filed on December 16, 1994. The Bank then had ten days to file objections to the report. In communications with the District Judge during that period, the Bank indicated that it intended to file objections, but did not explicitly inform the District Judge that it intended to reimburse its customers without setting aside a sum for attorney's fees.

For all of these reasons we affirm the grant of the preliminary injunction.[7]

## II. The Causation Issue

Appellees contend that the judgment constitutes an adjudication in their favor of the issue of whether they proved a causal connection between their lawsuit and the Bank's reimbursement of its customers. We disagree.

At the December 16, 1994, hearing before the Magistrate Judge, the issue was whether to grant a preliminary injunction. At that stage of the proceedings, the Magistrate Judge's task was to make a recommendation to the District Judge as to whether the plaintiffs met the preliminary injunction standard of demonstrating a reasonable probability of success on all elements of the claim for attorney's fees, including a causal relation between the lawsuit and the payment. Ultimate determination of the causation issue on its merits was not then pending and could be decided only upon a plenary hearing. As the Magistrate Judge explicitly stated in the May 2 Report, if the District Judge followed his recommendation and entered a preliminary injunction to set aside $500,000 of the common fund, the next step would be a Court hearing on causation. It is true that the District Court's July 19 Order states that the Court found causation. However, since the Court had before it only a recommendation for a preliminary injunction, this "finding" is properly understood to mean no more than that the Court found sufficient evidence to establish a probability of success on the issue of causation. That understanding harmonizes the Court's Order with the recommended ruling of the Magistrate Judge, which the Order purports to adopt.

Our ruling should not be interpreted to mean that the District Court must necessarily take additional evidence on the issue of causation upon remand of this case. The record gives some indication that the Bank at one point agreed that the District Court had found causation, and that upon remand the only matter left for determination would be the amount of fees to be awarded. If the District Court determines that both sides have had a full opportunity to present their evidence on the issue of causation, it may make a finding as to whether causation has been established, not merely as a matter of substantial probability, but as a matter of ultimate fact, proven by a preponderance of the evidence.

## Conclusion

We affirm the District Court's judgment to the extent that it grants plaintiffs' request for a preliminary injunction ordering the Bank to escrow $500,000 for a possible award of attorney's fees. We vacate the judgment

---

**7.** Since the preliminary injunction does not order any party other than the Bank to take any action, it does not run afoul of the general rule that a court lacks authority to undo an action by issuing an order directed to parties not before the court. *See* Fed.R.Civ.P. 65(d); *Federal Trade Commission v. Weyerhaeuser Co.,* 665 F.2d 1072, 1077 (D.C.Cir.1981) (collecting cases); *Industrial Bank of Washington v. Tobriner,* 405 F.2d 1321, 1323 n. 5 (D.C.Cir.1968) (same).

in all other respects, and remand for further proceedings consistent with this opinion.