Edwin D. SCHINDLER, Plaintiff,

v.

Frank A. FINNERTY, Jr., Chief Counsel for the New York State Grievance Committee for the Tenth Judicial District, Defendant.

Michael I. Kroll, Plaintiff,

v.

Frank A. Finnerty, Jr., Chief Counsel for the New York State Grievance Committee for the Tenth Judicial District, Defendant.

Nos. CV–97–2595(ADS), CV–97–3796(ADS).

United States District Court, E.D. New York.

Nov. 9, 1999.

Edwin D. Schindler, Coram, New York, plaintiff pro se.

Edwin D. Schindler, Coram, New York, for Michael I. Kroll, plaintiff.

Eliot Spitzer, Attorney General for the State of New York, Office of the Attorney General, by Robert K. Drinan, Assistant Attorney General, Mineola, New York, for the defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This decision presents a novel question. Namely, whether a patent attorney registered with the United States Patent and Trademark Office ("PTO") is subject to the rules and regulations governing the professional conduct of attorneys promulgated by the New York State Grievance Commit-

tee of the New York Bar Association (the "Grievance Committee"). For the reasons set forth below, the Court is of the view that even when engaged in patent work, patent attorneys are subject to the rules and regulations governing the professional conduct of New York Attorneys.

Edwin D. Schindler ("Schindler") and Michael I. Kroll ("Kroll") (collectively, the "plaintiffs"), both attorneys admitted to the PTO and the New York Bar Association ("NYBA"), filed separate complaints seeking an order of the Court declaring that the Grievance Committee lacks jurisdiction to investigate complaints filed against them in connection with their representation of several individuals. Presently before the Court is the plaintiffs' joint motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). In addition, Frank A. Finnerty, Jr., Chief Counsel for the New York State Grievance Committee for the Tenth Judicial District ("Finnerty" or the "defendant") has cross-moved for summary judgment pursuant to Rule 56 and moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). As both parties have filed various exhibits and Rule 56.1 statements the Court will analyze the motions in the context of a motion for summary judgment. *See G & A Books, Inc. v. Stern,* 770 F.2d 288, 295 (2nd Cir. 1985) (holding that "Rule 12(b)(6) permits the district court to consider matters outside the pleadings and to treat a motion for dismissal as one for summary judgment" provided that all parties are given reasonable notice and an opportunity to respond).

## I. BACKGROUND

Unless otherwise stated, the following facts are not disputed. On an unspecified date, the Grievance Committee received an undated letter from Marilyn Rose (the "Rose Letter"), in which she claimed that she was mistreated by Schindler. The letter alleged that Rose approached Schindler with an innovative idea sometime in 1994, but choose not to pursue a patent after learning of the associated costs. The idea was bound in a leather book and included some professional drawings prepared at a cost of $150. At Schindler's suggestion, Rose decided to leave the book with him and agreed to contact him in the event she changed her mind. Approximately three years later Rose contacted Schindler and requested the return of her book. Schindler indicated that he had the book, but would require time to locate its whereabouts. Rose phoned Schindler repeatedly for more than a month to inquire about the book, but on each occasion he requested more time to search for it. Rose claimed that Schindler became loud and abusive during their last conversation which ended when he hung up the telephone.

The Grievance Committee assigned an investigating attorney to the complaint, and on April 23, 1997, the investigator forwarded a copy of the Rose Letter to Schindler. The investigator informed Schindler that he "must" answer Rose's complaint within fifteen days. In a letter dated April 29, 1997, Schindler's attorney Michael S. Kim raised the defense of subject matter jurisdiction without waiving Schindler's right to respond on the merits. In essence, Schindler argued that the Committee lacked jurisdiction to investigate the alleged behavior described in the Rose Letter and that the PTO has exclusive jurisdiction over his conduct as a patent attorney. Nevertheless, the Committee continued to pursue the matter, and on June 20, 1997, Schindler received a letter indicating that the grievance against him was dismissed "without qualification."

The Grievance Committee also received several letters from former clients of Kroll alleging unprofessional conduct with respect to his work as a patent attorney. In an undated letter, Elly Ildiko Elias alleged that Kroll charged her $8,245 in connection with a proposed invention (the "Elias Letter"). In return, Elias claims to have received tardy and inadequate services. Eli-

as claims that despite numerous inquiries over a two year period, Kroll did not provide a patent number as requested. As a result, Elias consulted an attorney, Campbell Holder, Esq., who contacted Kroll on her behalf. Kroll allegedly told Holder that the patent application was delayed because it was not complete. On July 13, 1992, Elias and Holder met with Kroll to provide the missing information. However, at that meeting Kroll produced a patent rejection letter dated July 24, 1991. Kroll could not provide an explanation as to why Elias was not earlier informed of the rejection. In addition, Kroll refused to give her a refund. The Grievance Committee investigated the matter, and, on November 25, 1992, ordered Kroll to answer Elias's complaint. The Committee found Kroll's response insufficient, and issued a "Letter of Advisement" dated August 11, 1993, admonishing Kroll for his lack of professional conduct. Kroll seeks a declaratory judgment that the Grievance Committee lacked jurisdiction to investigate the Elias Letter, and asks this Court to vacate the Letter of Advisement.

In a letter dated June 17, 1996, Vincent Davi asserted that he authorized Kroll to charge $825 on his credit card to process a patent application (the "Davi Letter"). The Davi Letter indicates that Kroll charged a total of $3,500 to Davi's credit card account in less than a week. Davi canceled his credit card account and demanded a refund, but Kroll allegedly refused to cooperate. Kroll eventually reimbursed Davi's account, but not until his credit card company started an investigation into possible fraud. On July 11, 1996, the Grievance Committee ordered Kroll to answer Davi's complaint. In a letter dated September 3, 1996, Kroll asserted that the Committee lacked jurisdiction to investigate the alleged behavior described in the Davi Letter. On May 14, 1999, the Grievance Committee dismissed Davi's allegations without qualification. Kroll seeks a declaratory judgement that the committee lacked jurisdiction to investigate the allegations put forth by Davi.

By letter dated September 27, 1996, Louis Charles Strieber claimed that after receiving inadequate services from Kroll he hired patent attorney Robert J. Jacobson, Esq. (the "Strieber Letter"). Thereafter, Strieber requested that Kroll forward his patent file to Jacobson, and asked for a detailed accounting of the $21,000 he had previously paid to Kroll. While Kroll eventually produced a copy of the file, an adequate accounting was not provided for a year despite repeated requests by Strieber and Jacobson. On October 1, 1996, the Grievance Committee ordered Kroll to answer Strieber's complaint. In a letter dated October 9, 1996, Kroll asserted that the Grievance Committee lacked jurisdiction to investigate the alleged behavior described in the Strieber Letter. Subsequently, the Grievance Committee concluded the investigation and on May 14, 1999, dismissed the Strieber grievance without qualification. Kroll seeks a declaratory judgement that the committee lacked jurisdiction to investigate the allegations put forth by Strieber.

## II. DISCUSSION

### A. *As to Standing*

 To prevent a cause of action from being moot, a case and controversy must exist throughout the entire proceeding in federal court. *See Freedom Party of New York v. New York State Bd. Of Elections,* 77 F.3d 660, 662 (2d Cir.1996). As the Second Circuit stated:

It is a commonplace that jurisdiction of federal courts is limited to cases and controversies. U.S. Const. art III, § 2, cl. 1. Hence, litigants are required to demonstrate a "personal stake" or "legally cognizable interest in the outcome" of their case. *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 395, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)). While the standing doctrine evaluates this personal stake as

of the outset of the litigation, **the mootness doctrine ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit,** see *Geraghty*, 445 U.S. at 396–97, 100 S.Ct. at 1209; *Etuk v. Slattery*, 936 F.2d 1433, 1441 (2d Cir.1991), including the pendency of the appeal. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). Accordingly, a case that is "live" at the outset may become moot "when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." *Alexander v. Yale*, 631 F.2d 178, 183 (2d Cir.1980); *see Lewis*, 494 U.S. at 477, 110 S.Ct. at 1253. *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir.1993) (emphasis added).

█ The only exception to this rule applies in situations "capable of repetition, yet evading review." *Id.* at 19 (citing *Southern Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 [1911] ). In *Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621, 628 (2d Cir.1989) the Second Circuit held that a case is "capable of repetition, yet evading review" where "[t]he issues properly presented, and their effects, ... will persist in [the] future ... and within a time frame too short to allow resolution through litigation." *Id.* (citations omitted).

██ Based upon these standards, it is clear that Schindler lacks standing to challenge the Grievance Committee's investigation with regard to the Rose Letter. As previously stated, on June 20, 1997, Schindler received a letter from the Grievance Committee dismissing the complaint without qualification. Similarly, Kroll lacks standing with regard to the Davi and Strieber letters as the Grievance Committee, on May 14, 1999, dismissed their complaints without qualification. While Schindler and Kroll argue that these types of complaints and investigations by the Grievance Committee are subject to repetition,

the Court is not persuaded that these examples fall within the exception of the mootness doctrine for situations "capable of repetition, yet evading review." *Id.* (citing *Southern Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 31 S.Ct. 279 [1911] ). There is nothing in the complaint to suggest that the Grievance Committee has attempted to evade review and the plaintiffs do not provide any evidence that would lead the Court to believe that the Grievance Committee investigations will be repeated. Furthermore, there is no credible evidence that the challenged action is too short in duration to be fully litigated prior to its cessation or expiration. *See Cook, supra*, 992 F.2d at 19. As the Second Circuit recently stated in *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir.1998) "[a] case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." *Id.* (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383 [1979] ) (other citation omitted). Here, the Rose, Davi and Strieber complaints were dismissed without qualification. Accordingly, the Court finds that the plaintiffs lack standing with respect to the these complaints.

█ However, with regard to Elias's complaint against Kroll, the Court is of the view that standing exists as the Grievance Committee issued a Letter of Advisement admonishing Kroll for his lack of professional conduct. As such, Kroll has standing to seek a declaratory judgment vacating this finding.

B. *As to Subject Matter Jurisdiction in the Instant Matter*

█ The defendant asserts that this Court lacks subject matter jurisdiction over the plaintiffs' claims. Federal courts have subject matter jurisdiction over any case where the "complaint states a colorable federal claim." *Rodriguez v. DeBuo-*

*no,* 175 F.3d 227, 233 (2d Cir.1999) (citing *Savoie v. Merchants Bank,* 84 F.3d 52, 57 [2d Cir.1996]). In *Rodriguez,* the plaintiffs' complaint necessitated judicial interpretation of two federal statutes. *Id.* The Second Circuit noted that the standard for subject matter jurisdiction is a "modest" one, and easily satisfied given the plaintiffs' claims. *Id.* (quoting *Savoie,* 84 F.3d at 57).

Moreover, federal district courts "have original jurisdiction under the federal question statute over cases 'arising under the Constitution, laws, or treaties of the United States.'" *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 529, 139 L.Ed.2d 525 (1997) (citing 28 U.S.C. § 1331). The Supreme Court has noted that "a cause of action arises under federal law ... when the plaintiff's well-pleaded complaint raises issues of federal law." *Id.* (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546 [1987]). *See also Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (holding that claims arising under federal patent law are subject to the original jurisdiction of the federal courts); *Franchi v. Manbeck,* 947 F.2d 631 (2d Cir.1991).

Kroll seek a declaratory judgment which requires judicial interpretation of two federal statutes. Specifically, determination of the issues presented necessitates analysis of: (1) 28 U.S.C. § 1338(a), which vests the federal courts with exclusive jurisdiction over civil actions regarding patents; and (2) 35 U.S.C. §§ 31–32, which grants the Commissioner of the PTO authority to regulate the conduct of patent attorneys. These statutes must be reviewed to determine whether the New York State Grievance Committee may investigate grievances submitted by clients of patent attorneys. Accordingly, the plaintiffs have asserted a colorable federal claim arising under federal law, and this Court has original jurisdiction to review the Grievance Committee's action with regard to Elias's complaint against Kroll.

## C. As to Elias's Complaint Against Kroll

The Court, having decided that Kroll has standing, and that it has subject matter jurisdiction over the complaint, must determine whether the Grievance Committee had the authority to investigate the allegations of Elly Ildiko Elias against Kroll. Kroll contends that the Grievance Committee lacks the authority to address grievances submitted by clients of patent attorneys regarding their patent prosecution practice. Kroll advances two arguments in support of this contention. First, that the Grievance Committee lacks jurisdiction pursuant to 28 U.S.C. § 1338(a). And second, that 35 U.S.C. §§ 31–32 preempts state regulations relating to the conduct of patent attorneys.

### 1. Jurisdiction under 28 U.S.C. § 1338(a)

 28 U.S.C. § 1338(a) vests federal district courts with original jurisdiction over "any **civil action** arising under any Act of Congress relating to patents...." 28 U.S.C. § 1338(a) (1999) (emphasis added). Kroll argues that the investigation by the Grievance Committee into the allegations of the Elias Letter constitutes a "civil action" within the meaning of the statute, thus falling under the auspices of federal jurisdiction.

There is little authority clarifying exactly what qualifies as a "civil action" within the meaning of 28 U.S.C. § 1338(a). Nevertheless, in interpreting 35 U.S.C. § 293, which grants federal courts jurisdiction over "nonresident patentees," it has been held that "[t]his jurisdiction is limited to actions for infringement of patents and actions for declaratory judgment involving validity or infringement of patents. It does not extend to contracts or other matters merely because the subject involved happens to be a patent." *North Branch Products, Inc. v. Fisher,* 179 F.Supp. 843, 845 (D.C.C.), *rev'd on other grounds,* 284 F.2d 611 (D.C.Cir.1960) (footnote omitted).

The *North Branch* Court narrowly construed the broad language of section 293, granting federal jurisdiction only over "proceedings affecting the patent or rights thereunder." *Id.* at 845–46.

Moreover, under the New York Code of Rules and Regulations, 22 NYCRR § 691.4(e) ("Section 691"):

> Upon receipt or initiation of a specific complaint of professional misconduct, any such committee may, after preliminary investigation and upon a majority vote of the full committee:
>
> (1) dismiss the complaint and so advise the complainant and the attorney;
>
> (2) conclude the matter by issuing a letter of caution to the attorney and by appropriately advising the complainant of such action; ....

22 NYCRR § 691.4(e) (1999).

Section 691 grants to the Grievance Committee authority to investigate allegations of attorney misconduct and determine what course of action, if any, is appropriate. In the Court's view, such an investigation, preliminary in nature, cannot be deemed a civil action under 28 U.S.C. § 1338(a).

By the provisions of section 1338(a) federal courts have exclusive jurisdiction only where a substantive question of federal patent law is pleaded as an element of the claim. Clearly, an investigation into the possible misconduct of a patent attorney does not amount to a substantial question of federal patent law. It is not a "civil action ... relating to patents." Accordingly, the Court finds that the Grievance Committee has, at least, concurrent jurisdiction with the PTO to investigate grievances filed against patent attorneys who are also members of the NYBA.

## 2. Pre-emption under 35 U.S.C. §§ 31–32

■ Kroll also contends that 35 U.S.C. §§ 31–32 pre-empts any State regulation regarding the conduct of patent attorneys. When evaluating an issue of pre-emption, the "critical question ... is always whether Congress intended that federal regulation supersede state law." *Louisiana Public Service Comm'n v. F.C.C.,* 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986). Where, as here, the subject matter is traditionally governed by state law, the congressional intent to pre-empt state law must be "clear and manifest." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). In this matter, the Court finds no evidence, "clear and manifest" or otherwise, of a Congressional intent to pre-empt state law with respect to regulating the professional conduct of patent attorneys.

■ 35 U.S.C. § 31 provides, in pertinent part, that:

> The Commissioner, subject to the approval of the Secretary of Commerce, may proscribe regulations governing the recognition and conduct of agents, attorneys, or other persons representing applicants or other parties before the Patent and Trademark Office, and may require them, before being recognized as representatives of applicants or other persons, to show that they are of good moral character and reputation....

35 U.S.C. § 31 (1999) ("Section 31").

Under Section 31, the Commissioner has discretion to supervise the proper conduct of patent attorneys practicing before the PTO. In addition, the Commissioner may "suspend or exclude, either generally or in any particular case, from further practice before the Patent and Trademark Office, any person ... who does not comply with the regulations established under section 31...." 35 U.S.C. § 32 (1999).

The Commissioner has established regulations regarding the conduct of patent attorneys pursuant to this authority. *See* 37 C.F.R. § 10.1 *et seq.* The Commissioner has also appointed a Committee on Discipline to review evidence and to "determine whether there is probable cause to bring charges under § 10.132" for improper conduct. 37 C.F.R. § 10.4 (1999). Sec-

tion 10.132 sets forth the rules governing whether a disciplinary proceeding is appropriate and what, if any, remedy should be imposed. See 37 C.F.R. § 10.132.

Kroll cites *Sperry v. State of Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), to support his contention that these regulations pre-empt state law with respect to the conduct of patent attorneys. In *Sperry,* the Supreme Court held that Florida could not require federally licensed patent attorneys to become members of the state bar as a prerequisite to practicing patent law within the state. *Id.* However, the Supreme Court also noted that "since patent practitioners are authorized to practice only before the Patent Office, the State maintains control over the practice of law within its borders except to the limited extent necessary for the accomplishment of the federal objectives." *Id.* at 402, 83 S.Ct. at 1335.

Furthermore, the Supreme Court has held that state law governs where the state law does not hinder the fulfillment of the objectives of the patent system. *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 262, 99 S.Ct. 1096, 1099, 59 L.Ed.2d 296 (1979). See *People v. Miller,* 252 N.Y.S.2d 497, 43 Misc.2d 853 (1964) (holding that state regulation prohibiting patent attorneys not admitted to the state bar from using the designation "attorney-at-law" does not interfere with the necessary scope of practice before the PTO).

In addition, the same code established by the Commissioner of the PTO to regulate the conduct of patent attorneys states that "[n]othing in this part shall be construed to preempt the authority of each State to regulate the practice of law, except to the extent necessary for the Patent and Trademark Office to accomplish its federal objectives." 37 C.F.R. § 10.1 (1999). Thus, it is clear that a state may regulate the conduct of patent attorneys provided the State does not frustrate the necessary scope of practice before the PTO. In this case, the Grievance Committee by its actions against Kroll, did not in any way "frustrate the necessary scope of practice before the PTO." If anything, it supported the maintenance of proper standards for practitioners before the PTO.

The Grievance Committee conducts preliminary investigations to determine if a disciplinary proceeding is warranted in much the same manner as the PTO Committee on Discipline determines whether to bring charges under section 10.132. The goals of these committees are similar; namely, to maintain the high standards of our worthy profession. As such, the Grievance Committee has not created an additional burden on patent attorneys. The Court is of the view, that Regulation of the professional conduct of patent attorneys admitted to the NYBA is well within the province of the state's police powers, and cannot be deemed to frustrate the necessary scope of practice before the PTO. In fact, the Commissioner of the PTO has mandated the same degree of required professional conduct. Accordingly, the Court holds that 35 U.S.C. §§ 31–32 does not preclude the Grievance Committee from regulating the conduct of patent attorneys who are also admitted to the NYBA.

### III. CONCLUSION

Accordingly, it is hereby

**ORDERED,** that the plaintiffs' motion for summary judgment seeking a declaratory judgment nullifying the findings of the Grievance Committee's investigation into the Rose Letter, Elias Letter, Davi Letter and Strieber Letter is **DENIED;** and it is further

**ORDERED,** that the defendant's cross-motion for summary judgment seeking dismissal of the plaintiffs' complaint in its entirety is **GRANTED;** and it is further

**ORDERED,** that the clerk of the court is directed to close these cases.

**SO ORDERED.**