08-4289-cv
Kickham Hanley P.C. v. Kodak Income Retirement Plan

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2008

Argued:  December 11, 2008                    Decided: February 26,  2009

Docket No. 08-4289-cv

———————————————————

KICKHAM HANLEY P.C.,

*Plaintiff-Appellee*,

-v.-

KODAK RETIREMENT INCOME PLAN, an ERISA Plan; TRUSTEE of the KODAK RETIREMENT INCOME PLAN; and KODAK RETIREMENT INCOME PLAN COMMITTEE,

*Defendants-Appellants*.

———————————————————

Before:        CABRANES, RAGGI, and LIVINGSTON, *Circuit Judges*.

Expedited appeal from the grant of a preliminary injunction entered on August 25, 2008, in favor of Kickham Hanley P.C. by Judge David G. Larimer of the United States District Court for the Western District of New York.

Reversed and remanded.

GREGORY D. HANLEY (Christopher S. Olson, *on the brief*), Kickham Hanley P.C., Royal Oak, Michigan; Daniel F. Brown, Damon & Morey LLP, Buffalo, New York, *for Plaintiff-Appellee*.

FRED G. ATEN, JR., Rochester, New York; Brian T. Ortelere and Joseph B.G. Fay, Morgan, Lewis & Bockius LLP, Philadelphia, Pennsylvania; Gregory J. Gumina, Chief Benefits Counsel, Eastman Kodak Company, Rochester, New York, *for Defendants-Appellants*.

LIVINGSTON, *Circuit Judge*:

Defendants-Appellants Kodak Retirement Income Plan ("KRIP"or "the Plan"), the Trustee of the Kodak Retirement Income Plan, and Kodak Retirement Income Plan Committee ("KRIPCO") appeal from the decision and order entered on August 25, 2008, by Judge David G. Larimer of the United States District Court for the Western District of New York. The decision and order granted a preliminary injunction in favor of Plaintiff-Appellee Kickham Hanley P.C. ("Kickham") that prevents Defendants-Appellants from making pension benefit payments to certain plan participants unless they place 15% of the payments in escrow pending adjudication of Kickham's entitlement to an attorney's fee award from these benefits. Because we conclude that Kickham's claim to attorney's fees drawn from undistributed vested pension benefits violates ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

*Background*

KRIP is a defined benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461,[1] that is administered by KRIPCO for the benefit of employees of Eastman Kodak Co. ("Kodak"). Michael Scanlan, a client of Kickham, was hired by Kodak on October 7, 2002, to work for Kodak's Health Group. As a result of his employment, Scanlan participated in KRIP, which required a participant to complete at least five years of employment to become a vested beneficiary. In May 2007, Kodak sold its Health Group to Onex Healthcare Holdings, Inc. ("Onex"). Scanlan and approximately 3,500 other employees were divested to Carestream Health, Inc., a subsidiary or affiliate of Onex, which necessitated their termination from

---

[1] "A defined benefit plan is one that promises to pay employees, upon retirement, a fixed benefit under a formula that takes into account factors such as final salary and years of service with the employer." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 637 n.1 (1990).

Kodak employment. Approximately 530 of these employees, including Scanlan, had not vested their KRIP benefits yet because they had worked less than five years for Kodak. For this reason, KRIPCO determined that Scanlan was not entitled to benefits.

By letter dated June 28, 2007, and pursuant to a claims procedure set forth in the Plan, Kickham challenged the denial of KRIP benefits to Scanlan and, purportedly, to similarly situated participants, arguing that there had been a partial termination of the Plan, entitling these participants to benefits. By letter dated December 14, 2007, KRIPCO rejected Kickham's arguments and declared Scanlan ineligible for benefits. The KRIPCO letter also informed Kickham that it must provide the names of any additional plan participants it claimed to represent for their cases to be considered. Kickham appealed the decision by letter dated January 14, 2008, again claiming to represent "a class of similarly situated persons." Joint App. 441.

On February 27, 2008, before KRIPCO had resolved the administrative appeal, Kickham filed a complaint in federal court initiating the present suit for attorney's fees. Kickham's complaint alleged that, in discussions between the parties in February, KRIPCO had indicated that it was considering the option of declaring a partial termination of the Plan and vesting all unvested, involuntarily terminated participants, but that it did not believe that Kickham would be entitled to fees based on any recovery by these plan participants. On March 18, 2008, Kickham moved for a preliminary injunction to the effect that, in the event KRIPCO granted Scanlan's claim to benefits or declared a partial termination of the Plan, Defendants-Appellants would be barred from distributing more than 70% of the newly vested funds to plan participants prior to the district court's ruling on Kickham's claim for attorney's fees. A motion hearing was set for May 28 and later rescheduled for June 9.

3

On March 31, 2008, KRIPCO informed Kickham by letter that KRIPCO was granting Scanlan access to his benefits. KRIPCO again rejected Kickham's claim to be acting on behalf of individuals similarly situated to Scanlan, noting that Kickham had not named its additional clients as requested and that KRIPCO read the Plan to require each person seeking benefits to file a claim and to specifically authorize any firm's representation. KRIPCO also stated that "it is unclear whether any other former employees are similarly situated to Mr. Scanlan for any number of reasons." *Id.* at 135. By a separate letter dated the same day, KRIPCO rejected Kickham's claim to attorney's fees. Treating Kickham's filed complaint as a claim for fees under the terms of the Plan and noting that KRIP requires fee claims to be made within 60 days of the denial of benefits, KRIPCO declared Kickham's claim for fees untimely because Kickham's complaint was filed more than 60 days after its receipt of the December 14, 2007 letter denying benefits to Scanlan. According to Defendants-Appellants, Kickham failed to appeal this determination as required by the Plan prior to pursuing litigation.

On April 2, 2008, KRIPCO mailed letters to the approximately 530 former Kodak employees previously denied pension benefits due to the May 2007 sale of the Kodak Health group, informing them that they would be given access to benefits through their KRIP accounts. By letter dated April 15, 2008, Kickham accused KRIPCO of attempting to cheat Kickham out of its fees and demanded information concerning the number of former employees who had received the letter from KRIPCO and how that group was defined. According to Kickham, KRIPCO did not respond.

On May 7, 2008, Kickham filed an amended complaint seeking, *inter alia*, a declaration that its advocacy had created a common fund for the benefit of Scanlan and a class of similarly situated plan participants and that Kickham was entitled to a fee, presumably drawn from that fund, for conferring this benefit upon the class members. Kickham requested that notice be provided to

affected plan participants, that a hearing be held on the issue of the amount of attorney's fees and costs to be awarded, and that the court thereafter order Defendants-Appellants to pay these fees out of the undistributed plan funds "allocated or otherwise payable to the affected [p]lan participants." *Id.* at 131–32. Kickham continued to seek an injunction barring KRIPCO from distributing more than 70% of the newly vested funds pending resolution of its claim to attorney's fees.

On May 20, 2008, Defendants-Appellants filed a motion to dismiss. A hearing on both the motion to dismiss and Kickham's still-pending preliminary injunction motion was held on June 9, 2008. On August 25, 2008, the district court granted Kickham's motion for a preliminary injunction in part and denied Defendants-Appellants' motion to dismiss.

Regarding the preliminary injunction, the district court found that Kickham would suffer irreparable harm if forced to seek its fee from hundreds of benefit recipients after a fund distribution. Noting the complexity and inconsistency of the case law concerning attorney's fees in common fund cases, the court also found that Kickham had raised sufficiently serious questions going to the merits of its case. The court determined that whether a common fund had been created and, if so, whether its creation was due to Kickham's efforts were factual disputes that did not preclude a preliminary injunction. It also found that the balance of hardships tilted in Kickham's favor, deciding that any delay in sending payments to plan participants would be justifiable. The court determined, however, that Kickham's request for the reservation of 30% of any payments to the now-vested plan participants was excessive in light of any attorney's fee award Kickham might realistically expect. The court therefore entered a preliminary injunction barring distribution of 15% of such payments. It did not require Kickham to execute a bond.

With respect to Defendants-Appellants' motion to dismiss, the district court concluded that Kickham had stated a claim under the common fund doctrine. Because Kickham was not a party to

5

the Plan, the district court found inapposite Defendants-Appellants' argument that the Plan's terms precluded Kickham's action. As for Defendants-Appellants' claim that awarding relief to Kickham would violate the anti-alienation provisions of ERISA, 29 U.S.C. § 1056(d)(1), and the Internal Revenue Code, 26 U.S.C. § 401(a)(13), the district court ruled these provisions inapplicable because it found "no clear statutory intent to proscribe fee awards from ERISA-related common funds," nor any cases dealing with such fee awards that showed any concern over the prohibitions on alienation of benefits. *Kickham Hanley P.C. v. Kodak Ret. Income Plan*, 574 F. Supp. 2d 314, 319 (W.D.N.Y. 2008). Finally, the district court rejected Defendants-Appellants' argument that Kickham lacked standing and failed to exhaust administrative remedies, observing that Kickham based its claim on the common fund doctrine, not on ERISA.[2]

On August 29, 2008, Defendants-Appellants filed an interlocutory appeal from the district court's decision to grant a preliminary injunction to Kickham.

*Discussion*

This Court reviews a district court's decision to grant a preliminary injunction for abuse of discretion, which occurs "when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Vincenty v. Bloomberg*, 476 F.3d 74, 83 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Mastrovincenzo v. City of New York*, 435 F.3d 78, 88 (2d Cir. 2006)). To obtain a preliminary injunction, the moving party must demonstrate "(1) a

---

[2] The decision and order of the district court also considered and rejected Defendants-Appellants' motion to strike references to settlement negotiations from Kickham's complaint pursuant to Federal Rule of Civil Procedure 12(f).

6

likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008). With respect to Kickham's showing of irreparable injury, this Court has recognized in a non-ERISA context that forcing counsel to attempt to collect its fee from hundreds of trust customers individually "is so impractical as to be infeasible, and constitutes irreparable harm." *Savoie v. Merchants Bank*, 84 F.3d 52, 58 (2d Cir. 1996). Defendants-Appellants do not appear to challenge the district court's reliance on *Savoie* to find that Kickham demonstrated irreparable injury; nor do they attack the district court's determination that the balance of hardships tipped in Kickham's favor. The primary issue this Court must decide, therefore, is whether Kickham's common fund claim to the vested pension benefits at issue presented sufficiently serious questions going to the merits such that the district court did not abuse its discretion in granting the preliminary injunction. We conclude that Kickham cannot successfully lay claim to vested but undistributed benefits and, therefore, that the preliminary injunction should not have issued.

Kickham correctly acknowledges that the district court could not award attorney's fees under ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1), because that provision permits recovery "only for fees incurred in relation to a suit filed in a court of competent jurisdiction" and not those "incurred during the initial administrative process." *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 121 (2d Cir. 2002). Nevertheless, Kickham contends that this limitation on ERISA's fee-shifting provision is inapposite, because Kickham is not attempting to collect attorney's fees from Defendants-Appellants pursuant to § 1132(g)(1). Rather, Kickham seeks fees from the affected plan participants under the equitable "common fund" doctrine. Kickham's argument is an artful attempt to avoid the Scylla of § 1132(g)(1). In asserting a claim directly against the plan participants' vested,

7

but undistributed pension benefits, however, Kickham passes too close to the Charybdis posed by ERISA's anti-alienation provision—a provision that we conclude prohibits the very relief that Kickham seeks. *See* ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1); *see also* 26 U.S.C. § 401(a)(13) (precluding a plan from qualifying for tax-exempt status in the absence of an anti-alienation provision).

ERISA's anti-alienation provision mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). In *Guidry v. Sheet Metal Workers National Pension Fund*, the Supreme Court indicated that this provision "erects a general bar to the garnishment of pension benefits from plans covered by the Act." 493 U.S. 365, 371 (1990). This Court has observed that a principal rationale behind ERISA's anti-alienation provision is "the prohibition of involuntary levies by third party creditors on vested plan benefits." *Ellis Nat'l Bank of Jacksonville v. Irving Trust Co.*, 786 F.2d 466, 470 (2d Cir. 1986). Such a prohibition supports Congress's primary objective of ensuring through ERISA that, "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit . . . he actually receives it." *Id.* at 471 (alteration in original) (internal quotation marks omitted) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510 (1981)).

Kickham attempts to avoid the application of § 1056(d)(1) by asserting that the common fund doctrine grants Kickham an interest in that portion of the Plan's benefit funds that it allegedly helped to create or preserve and that, accordingly, the plan participants have no claim to Kickham's part.[3]

---

[3] We note that Kickham describes its interest in the funds as both legal *and* equitable. The applicable administrative regulation interpreting § 1056(d) makes clear, however, that "benefits provided under the plan may not be anticipated, assigned (either *at law* or *in equity*), alienated or subject to attachment, garnishment, levy, execution or other *legal* or *equitable* process." 26 C.F.R. § 1.401(a)-13(b)(1) (emphasis added); *see also Robbins ex rel. Robbins v.*

Even assuming, *arguendo*, that Kickham accurately describes the effects of the common fund doctrine, however, Kickham's purported interest in the funds is insufficient to negate the operation of the anti-alienation provision. As the Supreme Court said in *Guidry*, § 1056(d) "reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners . . . even if that decision prevents others from securing relief for the wrongs done them." 493 U.S. at 376. And in *United States v. All Funds Distributed to Weiss*, this Court explicitly recognized (albeit in dicta) that even a strong claim of legal or equitable title to undistributed pension funds is not a sufficient basis to avoid the application of § 1056(d)(1). *See* 345 F.3d 49, 56–58 (2d Cir. 2003). In that case, the Court concluded that ERISA's anti-alienation provision prevented the United States from proceeding *in rem* to forfeit undistributed pension funds even when these funds were allegedly the proceeds of fraudulent Medicare claims. *Id.* at 52, 58. Under the civil forfeiture statute, "[a]ll right, title, and interest in [the defendant] property [vests] in the United States upon commission of the act giving rise to forfeiture," which in *Weiss* occurred at a point *prior to* the funds' deposit into an ERISA plan. *Id*. at 52, 55 (first and second alteration in original) (internal quotation marks omitted) (quoting 18 U.S.C. § 981(f)). This Court nevertheless concluded, citing *Guidry*, that, "until the . . . pension plan funds were distributed to the plan beneficiaries, the government could not have made its forfeiture claim successfully." *Id*. at 57.

We can discern no meaningful distinction between the claim to undistributed pension funds that Kickham asserts and other claims indisputably barred by § 1056(d)(1). *See, e.g.*, *Guidry*, 493 U.S. at 372 (concluding that placing constructive trust on pension benefits was prohibited by §

*Debuono*, 218 F.3d 197, 203–04 & n.3 (2d Cir. 2000) (discussing regulation and Treasury Secretary's authority to interpret § 1056(d)), *overruled on other grounds by Wojchowski v. Daines*, 498 F.3d 99, 101 (2d Cir. 2007).

1056(d)(1)); *Ellis Nat'l Bank of Jacksonville*, 786 F.2d at 469–72 (ruling that constructive trust could not be imposed on pension funds, despite party claiming entitlement to the funds under common law principles of equity, state common law of trusts, and state criminal restitution statutes). Regardless of how Kickham describes "the unique facts this case presents," Br. for Pl.-Appellee Kickham Hanley P.C. 41, it cannot avoid the statutory protection ERISA extends to pension benefits while they are held by the plan administrator. *See Robbins ex rel. Robbins v. Debuono*, 218 F.3d 197, 203 (2d Cir. 2000), *overruled on other grounds by Wojchowski v. Daines*, 498 F.3d 99, 101 (2d Cir. 2007). "Only once the proceeds of the pension plan have been released to the beneficiary's hands, can creditors and others pursue claims against the funds and the funds' owner(s)." *Weiss*, 345 F.3d at 57.

Nor does Kickham point this Court to any exceptions to the anti-alienation provision that might apply to its case. Naturally, Congress may create statutory exceptions to ERISA's anti-alienation provision, as it has done on occasion. *See, e.g.*, *United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006) (concluding that the Mandatory Victim Restitution Act of 1996, 18 U.S.C. § 3613(a), constituted an exception to ERISA's anti-alienation provision). No statutory provision even arguably applies to permit Kickham's claim, however. Kickham appeals only to equitable principles underlying the common fund doctrine. But as the Supreme Court cautioned in *Guidry*, "[a]s a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." *Guidry*, 493 U.S. at 376.

In *Guidry*, the Supreme Court reversed a judgment imposing a constructive trust on the undistributed pension benefits of a union official who had embezzled money from the union, thereby likely injuring the other beneficiaries of the union's pension plan. *Id.* at 367–68, 377. Acknowledging the "natural distaste" in these circumstances with affording a malefactor access to

his benefits, the Court nevertheless did not "think it appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits." *Id.* at 376–77. Such a policy determination was the prerogative of Congress. *Id.*

More recently, in *Martorana v. Board of Trustees of Steamfitters Local Union 420 Health, Welfare & Pension Fund*, the Third Circuit reversed an order providing for the equitable set-off of attorney's fees from the plaintiff's undistributed pension benefits, imposed to give effect to the district court's award of such fees to an ERISA plan's board of trustees. 404 F.3d 797, 799–800, 804 (3d Cir. 2005). The Third Circuit noted that Congress's 1997 amendments to the anti-alienation provision, which permit the set-off of benefits in specific situations, provide no authorization for such a set-off in order to recoup the expenses of defending against frivolous claims brought against a plan by its participants. *Id.* at 804. Relying on *Guidry*'s "cautionary advice" that the identification of exceptions to § 1056(d)(1) should be left to Congress, the Third Circuit concluded that the equitable set-off at issue violated ERISA's anti-alienation provision. *Id.* at 802–04.

Kickham's circumstances present a less compelling case for inferring an equitable exception to § 1056(d)(1) than existed in either *Guidry* or *Martorana*. While a district court has discretion to award attorney's fees to either party in ERISA litigation, *see* 29 U.S.C. § 1132 (g)(1), there are good reasons that the statute does not provide for such awards for work done in administrative proceedings. As the Fourth Circuit has noted:

> If attorneys were injected into those administrative procedures as a matter of course, it would establish a far higher degree of formality and lead to more protracted litigation in a great many cases. The resulting combination of increased litigation costs and decisions by benefits plans to pay questionable claims so as to avoid such costs could severely undermine the congressional purpose of promoting "the soundness and stability of plans with respect to adequate funds to pay promised benefits."

11

*Rego v. Westvaco Corp.*, 319 F.3d 140, 150 (4th Cir. 2003) (quoting 29 U.S.C. § 1001(a)); *see also Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 454 (6th Cir. 2000); *Cann v. Carpenters' Pension Trust Fund for N. Cal.*, 989 F.2d 313, 317 (9th Cir. 1993). This Court has recognized that "if, under a particular combination of facts, the operation of the [common] fund doctrine conflicts with an intended purpose of a relevant fee-shifting statute, the statute must control and the doctrine must be deemed abrogated to the extent necessary to give full effect to the statute." *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990). We need not address whether such a conflict exists here, given the clear terms of the anti-alienation provision. Suffice it to say that Kickham's generalized observations regarding the need to compensate attorneys for taking on complex ERISA cases fail to address the legitimate concern that allowing attorney's fees for administrative procedures will undermine the ability of plans to resolve the majority of claims through informal mechanisms that are less costly and time consuming than litigation. *See, e.g.*, *Rego*, 319 F.3d at 150. Kickham simply has not given this Court reason to disregard *Guidry*'s admonition against inferring equitable exceptions to ERISA's statutory prohibition on the alienation of benefits. *See* 493 U.S. at 376–77.

Kickham argues that Defendants-Appellants can cite no case precluding a common fund recovery based on the anti-alienation doctrine and that, in fact, numerous cases involving ERISA plans have awarded attorney's fees based on the common fund doctrine without even mentioning ERISA's anti-alienation provision. Brought predominantly against employers and plan fiduciaries for violations of fiduciary duties, however, the cases Kickham points to involved class action suits in which settlement negotiations resulted in the creation of a common fund. These common funds were all financed by parties other than the plans at issue, and the funds themselves were never designated as vested pension benefits—rather, these were general settlement funds that allowed for

12

(and, often, specifically provided for) payment of attorney's fees out of the common fund. *See, e.g.*, *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004) (citing, *inter alia*, *In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004); *Kolar v. Rite Aid Corp.*, No. Civ. A. 01-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhouse Coopers, L.L.P.*, 212 F.R.D. 400 (E.D. Wis. 2002)); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 456 (E.D. Pa. 1995). Since the attorney's fees in these cases were not paid with vested pension benefits nor by monies taken directly from pension plans, any discussion of ERISA's anti-alienation provision would have been irrelevant.[4]

Furthermore, we agree with the Seventh Circuit that, for purposes of ERISA's bar on alienation, there is a critical distinction between a "pension entitlement," which "arises under the terms of the pension plan itself," and a "contested pension claim," which "arises under a settlement agreement." *Lynn v. CSX Transp., Inc.*, 84 F.3d 970, 975 (7th Cir. 1996). While pension entitlements are subject to the anti-alienation provision, contested pension claims are not and may be knowingly and voluntarily released as part of a settlement resolving an actual or potential dispute over pension benefits. *Id.*; *see also Finz v. Schlesinger*, 957 F.2d 78, 81–83 (2d Cir. 1992) (finding that plaintiff validly waived his pension benefits as part of agreement settling parties' dispute regarding his ERISA plan coverage); *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1364–68 (2d Cir. 1991) (concluding that "an individual generally may waive the right to participate in a pension plan governed by ERISA," so long as that waiver is "knowing and

---

[4] We note that Kickham cites no case in which the common fund doctrine has been invoked to justify collecting attorney's fees from the vested pension benefits of ERISA plan participants, or to justify the payment of attorney's fees for legal work done during administrative proceedings.

voluntary"); *Katzenberg v. Lazzari*, No. 04-cv-5100, 2007 WL 1017645, at *15 (E.D.N.Y. Mar. 30, 2007) (surveying case law permitting employees to waive pension claims).

Kickham contends that its "claim for fees from affected Plan participants constitutes a 'contested pension claim.'" Br. for Pl.-Appellee Kickham Hanley P.C. 45. The applicability of ERISA's anti-alienation provision is determined not by the characterization of *Kickham*'s claim to pension benefits, however, but by the type of claim that the *plan participants* have to the benefits. On this issue, we think it plain that the affected plan participants have pension entitlements, not merely contested pension claims. As Defendants-Appellants acknowledge, these plan participants are presently entitled to their benefits under the KRIP. The funds at issue in this case are the participants' vested pension benefits, as Kickham itself concedes, not settlement proceeds that the participants may secure only by releasing potential claims under the Plan. That Kickham allegedly helped bring about KRIPCO's recognition that plan participants were entitled to their pension benefits does not alter the conclusion that these are pension entitlements.[5] Nor may Kickham avoid this result by claiming that the common fund doctrine provides it a unique interest in the benefits that makes Kickham more than a "garden-variety creditor." *Id.* at 39.

Kickham also suggests that the anti-alienation provision is inapplicable "because it is possible that the Affected Participants will voluntarily relinquish a portion of their vested benefits." *Id.* at 43. Kickham goes on to propose that the district court could "provide the Affected Participants with notice of this action and give them the opportunity to be heard on [its] request for fees." *Id.* at

---

[5] In reaching this conclusion, we do not address the effect of § 1056(d)(1) on a claim for attorney's fees in circumstances in which a plan administrator recognizes an employee's entitlement to benefits after that employee has filed suit but before any settlement has been reached. At the least, this scenario raises separate considerations because such an employee would presumably have recourse to ERISA's fee-shifting provision. *See* 29 U.S.C. § 1132(g)(1).

14

43 & n.4.  Putting aside the costs and difficulties of putting together the *sui generis* procedure that Kickham proposes, Kickham's argument for prohibiting benefit distribution in the meantime puts the proverbial cart before the horse.  That plan participants might voluntarily waive their pension benefits—a proposition fairly regarded as unlikely—does not give Kickham the ability to prevent those benefits from being distributed prior to any such waiver and in frank derogation of § 1056(d)(1).[6]  *See Ellis Nat'l Bank of Jacksonville*, 786 F.2d at 471 (recognizing that, at trial, the appellant pension plan "might indeed recover some or all of the pension funds that it claims are traceable to fraud," but concluding that "to permit such recovery—indeed, perhaps even to permit the placement in escrow of the trust corpus, beyond the reach of the employee, *pendente lite*—would threaten the fundamental objective envisioned by Congress" in enacting ERISA's anti-alienation provision).

Finally, Kickham argues that Defendants-Appellants' actions during this litigation have rendered ERISA's anti-alienation provision inapplicable.  Specifically, Kickham points out that KRIPCO distributed a portion of the vested pension benefits during the pendency of Kickham's motion for a preliminary injunction.  As a result, Kickham contends, the district court has the power to impose personal liability on Defendants-Appellants for any fees the court determines are due to Kickham.  Kickham's argument relies on this Court's decision in *Savoie*, which applied the rule that "'where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may by mandatory injunction restore the *status quo*.'"  *Savoie*, 84 F.3d at 58 (quoting

---

[6] Kickham also asserts in a footnote that "[o]ther exceptions to the anti-alienation rules could apply if the Court holds that the anti-alienation rules would otherwise preclude [Kickham's] recovery."  Br. for Pl.-Appellee Kickham Hanley P.C. 45 n.5 (citing 26 C.F.R. § 1.401(a)-13(d) to -13(e)).  Because Kickham makes no more than a passing reference to these other anti-alienation exceptions, we consider any argument based on those exceptions forfeited.  *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

15

*Porter v. Lee*, 328 U.S. 246, 251 (1946)). In *Savoie*, this Court ruled that the defendant bank could not defeat an impending preliminary injunction requiring it to escrow certain trust funds by distributing those funds prior to the actual issuance of the injunction. *Id.* at 58–60. Instead, we approved a preliminary injunction essentially requiring the bank to escrow its own funds pending a decision on the Savoies' claim for attorney's fees. *Id.*

*Savoie* provides no basis on which Kickham can avoid the applicability of ERISA's anti-alienation provision. Unlike the bank in *Savoie*, Defendants-Appellants did not openly flout a magistrate judge's recommendations by distributing funds. *See id.* at 59–60. Rather, at the preliminary injunction hearing Defendants-Appellants informed the district court that KRIPCO might be required by law to distribute pension benefits prior to the court's decision on Kickham's motion. While the district court noted that it would consider issuing an order forbidding such action if the court concluded it was appropriate, the court never actually entered such an order nor otherwise directed KRIPCO to refrain from making any payments.

Even assuming that KRIPCO's conduct was improper, moreover, *Savoie* is inapplicable here. *Savoie* presented a case in which, by distributing the funds to be enjoined prior to the injunction's issuance, a party had potentially defeated what we determined to be an *otherwise valid* preliminary injunction. *See id.* at 58. The Court decided that, in these circumstances, it was appropriate to require that party to shoulder the burden of restoring the "status quo" by mandating that it escrow funds to stand in for the distributed funds. *See id.* at 59. We did not rule that the distribution of funds had itself created the circumstances justifying the imposition of a preliminary injunction, nor did we hold, as Kickham suggests, that the distributing party's actions gave rise to a new form of "personal liability" or cause of action against that party. Br. for Pl.-Appellee Kickham Hanley P.C. 45. In the present case, even if KRIPCO's distribution of a portion of the pension benefits at issue potentially exposes Defendants-Appellants to contempt sanctions, that distribution does not change

16

our conclusion that ERISA's anti-alienation provision prohibits the preliminary injunction that issued and prevents Kickham from pursuing a claim requiring Defendants-Appellants to pay vested pension benefits to it.[7]

Because allotting any portion of the KRIP pension benefits to Kickham before their distribution to plan participants would violate ERISA's anti-alienation provision, no relief may be granted as to Kickham's common fund claim. At the least, this conclusion demonstrates that Kickham's case does not present sufficiently serious questions as to justify a preliminary injunction. We therefore reverse the district court's entry of a preliminary injunction against Defendants-Appellants. In addition, we note that Defendants-Appellants raised the anti-alienation issue in their motion to dismiss before the district court, and the parties fully briefed the issue before this Court. Because our analysis of the anti-alienation issue permits this Court to dismiss Kickham's complaint as a matter of law, we conclude that

> this is an appropriate case for invoking the doctrine of *Smith v. Vulcan Iron Works*, 165 U.S. 518, 525 (1897); *North Carolina Railroad v. Story*, 268 U.S. 288, 292 (1925); and *CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11, 15 (2d Cir. 1975), that when on appeal from the grant of a preliminary injunction it appears that the "bill had no equity to support it[,"] 165 U.S. at 525, a court of appeals should direct dismissal of the complaint.

*USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1294 (2d Cir. 1995) (citations altered) (quoting *Friarton Estates Corp. v. City of New York*, 681 F.2d 150, 160–61 (2d Cir. 1982)). We therefore direct the district court to dismiss Kickham's complaint in its entirety.

Because application of ERISA's anti-alienation provision is dispositive as to the resolution of this case, we need not address the other issues raised on appeal.

---

[7] We note that Kickham still has a motion for contempt sanctions against Defendants-Appellants pending before the district court. The district court's resolution of this motion, however, is not before us on appeal, and we intimate no view on the matter.

17

*Conclusion*

ERISA's anti-alienation provision bars Kickham from requiring KRIPCO to pay a portion of KRIP's vested pension benefits to it, rather than to plan participants. Accordingly, we reverse the entry of a preliminary injunction in Kickham's favor, direct that Kickham's complaint be dismissed, and remand this case to the district court for further proceedings consistent with this opinion.